WILMA JEAN LAMPLEY,           )
                              )        **Williamson Chancery**
         **Plaintiff/Petitioner/Respondent,**    )        **No.  23651**
                              )
VS.                           )
                              )        **Appeal No.**
GORDON RAY LAMPLEY,           )        **01A01-9708-CH-00423**
                              )
         **Defendant/Respondent/Petitioner.**  )

FILED

February 6, 1998

Cecil W. Crowson
Appellate Court Clerk

## IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

### APPEAL FROM CHANCERY COURT OF WILLIAMSON COUNTY
### AT FRANKLIN, TENNESSEE

### HONORABLE H. DENMARK BELL, JUDGE

Honorable Virginia Lee Story
136 Fourth Avenue, South
P.O. Box 1608
Franklin, TN 37065-1608
ATTORNEY FOR PLAINTIFF/PETITIONER/RESPONDENT

Honorable Ernest W. Williams
Honorable J. Russell Heldman
320 Main Street, Suite 101
Franklin, TN 37064
ATTORNEYS FOR DEFENDANT/RESPONDENT/PETITIONER

## AFFIRMED AND REMANDED

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:
BEN H. CANTRELL, JUDGE
WILLIAM C. KOCH, JR., JUDGE

WILMA JEAN LAMPLEY,          )

                             )      **Williamson Chancery**

       **Plaintiff/Petitioner/Respondent,**   )      **No. 23651**

                             )

**VS.**                          )

                             )      **Appeal No.**

**GORDON RAY LAMPLEY,**         )      **01A01-9708-CH-00423**

                             )

       **Defendant/Respondent/Petitioner.**  )

# O P I N I O N

This is a post-divorce decree proceeding in which the defendant husband has appealed from an unsatisfactory disposition of his counter petition to terminate alimony.

On January 21, 1997, the wife filed a second "Petition for Enforcement of final Decree and for Contempt" containing the following:

> Defendant is in wilful contempt of the lawful Orders of this Court by his failure to pay Wife's health insurance and Petitioner would respectfully request that Defendant should be punished by powers of civil contempt by incarceration and that he be required to pay all medical bills which have been incurred by Petitioner as a result of his failure to abide by the lawful orders of this Court.

> That a Show Cause issue requiring the defendant to appear and show cause, if any he has, why he should not be punished by civil/or criminal contempt and incarcerated until he purges himself of contempt by reinstating Wife's medical insurance why he should not be made to immediately pay all outstanding medical bills which have been incurred as a result of his canceling her insurance or be incarcerated.

On March 19, 1997, the Trial Court ordered as follows:

> That Ms. Lampley's Petition for Contempt is granted however, the Court does not impose any sentence upon Mr. Lampley for contempt but will require Mr. Lampley to pay Ms. Lampley's attorney's fees in the amount of One Thousand Eight Hundred Twenty Five ($1,825.00) Dollars which shall in the nature of additional alimony and not subject to bankruptcy.

That Mr. Lampley's Counter-Petition is denied as to the termination of alimony and Mr. Lampley shall continue to pay the alimony obligation as awarded in the Final Decree of Divorce. Further, Mr. Lampley shall immediately resume Ms. Lampley's health insurance coverage and pay all medical bills which she has incurred as a result of his not having insurance coverage as was available to him through COBRA.

The marital dissolution agreement contained the following provisions:

2. REAL PROPERTY. The parties own real property located at 7324 Snow Mangrum, Fairview, Williamson County, Tennessee which shall be sold and Wife will receive the sum of Thirty Thousand and 00/100 ($30,000.00) Dollars of the equity as a division of marital property, with the remaining balance, after payment of real estate commission, closing costs and all indebtedness existing against said property, shall be paid to Husband.

The Wife shall continue to reside in the marital residence free from interference from Husband and shall pay the utilities associated therewith in a timely manner. Husband shall pay the mortgage existing on said property and upkeep and maintenance pending the sale in a timely manner.
- - - -
The parties have will (sic) divide all remaining personal property and all property now in the possession of each party shall become the party's sole and separate property free of all claims of the other party.
- - - -
4. ALIMONY. Husband shall pay Wife rehabilitative alimony for a period of 60 months at the rate of $600.00 per month. Said alimony payments shall begin the first day of the first month following the sale of the marital residence. Additionally, as rehabilitative alimony. Husband shall pay Wife's health insurance premium through COBRA for a period of 36 months or until Wife can qualify the TENNCARE.

5. INDEBTEDNESS. Husband will pay all existing medical bills and each party will pay ½ of the Dillard's account and the furniture bill. All other indebtedness will be paid by the party in whose name the indebtedness exists, holding the other party harmless for the same.

6. FEES AND COSTS. Husband shall pay the attorney's fees in the amount of $500.00 and the costs of this cause.

7. If it becomes necessary for either party to institute legal proceedings to enforce the terms of this instant agreement, then the other party shall be responsible for all attorney's fees and costs associated with said enforcement.

- - - -

17.     In the event that it becomes necessary for either party to seek to enforce the terms of this instant agreement, then the other party shall be responsible for a reasonable attorney's fees and the costs of this cause.

On November 6, 1996, the wife filed a "Petition for Enforcement of Final Decree and for Contempt."

On November 25, 1996, the Trial Court entered the following order:

IT IS THEREFORE ORDERED ADJUDGED, AND DECREED that the Respondents alimony payments shall be paid on the 1st of each month in the amount of $600.00 pursuant to the Final Decree of Divorce. That said payments shall hereafter be paid through the Clerk's office together with a 5% clerk's fee beginning December 1, 1996 and the 1st of each month thereafter pursuant to the Final Decree. That balance owing for the alimony payment for the month of November, 1996 shall paid immediately to Petitioner.

On December 5, 1996, the husband filed an "Answer to Petition for Enforcement of Final Decree and for Contempt and Petition for Termination or Reduction of Alimony Payments Set Forth in the Final Decree," containing the following.

COUNTER-PETITION

Comes now the respondent, Gordon Ray Lampley, and assumes the role of Counter-Petitioner and therefore states as follows:

1.     That on December 28, 1995, a Final Decree was entered in this cause which provided for rehabilitative alimony at the rate of $600 per month for sixty (60) months to begin on the first month following the sale of the marital residence. The marital residence was sold in September, 1996.

2.     The respondent/counter-petitioner's personal financial situation has drastically changed since the original marital dissolution agreement was entered into, even including the financial loss that was incurred because of the sale of the home.

3.     It is further alleged that the petitioner, Wilma Jean Lampley, is not in need of the rehabilitative alimony payments that are being paid on a monthly basis.

4.     T.C.A. § 36-5-101(5)(d)(2) states an award of rehabilitative, temporary support and maintenance shall remain in the Court's control for the duration of such award and may be increased, decreased, terminated, extended or otherwise modified, upon showing substantial material change of circumstances.

5.     The respondent/counter petitioner, had a substantial material change of circumstances and would show that rehabilitative alimony should not only be terminated because of this fact but also because lack of need by the petitioner.

WHEREFORE, premises considered, respondent/counter-petitioner prays

3.     that all rehabilitative alimony payments be terminated by the Court upon immediate hearing of this matter.

On April 18, 1997, the husband filed the following notice of appeal:

Please take notice that the Respondent/Counter-Petitioner, Gordon Ray Lampley, hereby appeals to the Court of Appeals, Middle Section of Nashville, from the Order entered by the Chancery Court for Williamson County, Tennessee entered the 19th day of March, 1997 wherein the Court found Gordon Ray Lampley in contempt of Court and awarded attorney fees as additional alimony, not subject to bankruptcy, and the Court denied Mr. Lampley's counter petition for the termination of alimony. In addition, the Court determined Mr. Lampley liable for all medical bills incurred as a result of not having insurance coverage available to him through COBRA.

On December 28, 1995, the Trial Court Entered a "Final Decree of Divorce containing the following:

THIS cause came on to be heard upon Complaint for Absolute divorce, Waiver of Service of Process, and Marital Dissolution Agreement entered into by and between the parties, from all of which it appears that the parties should be granted an absolute divorce on the grounds of irreconcilable differences, and that the Marital Dissolution Agreement is fair and equitable and should be approved by the Court;

IT IS THEREFORE, ORDERED, ADJUDGED and DECREED, that the parties are granted an absolute divorce on the grounds of irreconcilable differences, and the parties are restored to all of the rights and privileges of unmarried persons.

IT IS FURTHER ORDERED, ADJUDGED and DECREED, that the Marital Dissolution Agreement is fair

and equitable and proper and is hereby approved by the Court and made a part of this Final Decree as if set out herein verbatim.

On appeal, the husband presents the following issue:
> Whether the trial court erred in refusing to terminate Mr. Lampley's obligation to pay Ms. Lampley rehabilitative alimony of $600 per month for 60 months and to pay Ms. Lampley's health insurance premium through COBRA for a period of 36 months or until she can qualify for Tenn-Care.

The wife requests attorney's fees in this appeal.

Appellant first argues that their marital dissolution agreement was made in the anticipation that his share of the proceeds of the sale of the marital home would provide the funds to enable him to pay the agreed periodic alimony, and that the sale price of the home proved to be inadequate for this purpose.

Appellant also argues that his varying employment and business ventures since the divorce have rendered him unable to pay the alimony. His testimony in this regard is summarized as follows:

> The August 1996, auction sale of home did not produce agreed $30,000 for wife and husband forced to contribute $5,795 cash to provide the $30,000.

> At the time of the divorce, appellant was employed as sales manager of General American Insurance and had a "real good" year selling real estate with Caldwell Banker of Dickson with net take-home pay of $4,020.97 per month. He was "doing real well" with 40 to 45 listings and expecting listing of 81 lots.

In February or March 1996, appellant created a business called "Advance Cash" which was essentially a short-term, high interest small loan business. He created other associated businesses called Tele-Check, Tele-Trak and Mid State Credit Bureau.

In 1996, appellant began to work for Caldwell Banker, a real estate sales agency and had brief success until an associate created another real estate company called ERA and

obtained the transfer of appellant's listings to the new company. At the trial, appellant had only two listings. In January 1997, appellant jointed ERA.

In February 1997, appellant filed a Chapter 7 Bankruptcy.

At some point in the development of his separate activities, appellant left his supervisory employment with American General. Subsequently, he was permitted to resume work with American General as a sales agent.

In September 1996, appellant purchased a home for himself and a lady with children. The payment on the home is $947.00 per month of which appellant pays one-half.

He pays $257.71 per month on an automobile bought for his daughter.

He pays $300.00 per month college tuition for his daughter and $223.00 per month for his son of a previous marriage.

He is paying $300.00 per month COBRA Health Insurance for himself and son.

He has an independent license to sell health insurance but is not affiliated with any insurance company.

Appellant admits net income of $199.87 per week (about $800.00 per month) which he "draws" from three of his "stores." He admits that his commissions on real estate sales "could be" $800 per month, which would add up to $1,600.00 per month.

In contrast, appellant insists that appellee now earns $6,652.00 per month, a dramatic increase from her 1994 gross income of $833.00 per month.

Appellant also alleges that, appellee by various means has acquired three real estate properties. Appellee's mother gave her two acres containing a residence. Her son-in-law gave her 2 acres with a trailer home on it which rents for $300.00 per month. She has used her part of the distribution of the marital estate and a $60,000.00 loan to construct a new home.

In short, appellant insists that he made a bad bargain in the property settlement agreement and that he should therefore be relieved of it; that he is no longer able to pay the agreed alimony; and that appellee does not need it.

Appellee responds that the joint earnings of the parties in 1994 were $84,914; in 1995, appellants reported earnings were $63,123.00; and, in 1996, his gross earnings were $75,472.00.

The wife points out that her net income from her home cleaning business is only $1,828.00 per month, and the husband's admitted net take-home pay was $4,020.97 per month in 1996.

It also appears from the evidence that, in 1996, the husband purchased a home jointly with his paramour and children and that he pays ½ of the $947.00 per month mortgage payment on the home.

It also appears that the husband was relieved of $60,000.00 of unsecured debts by a 1996 bankruptcy, and that he owns property at Crossville, Tennessee which the bankruptcy trustee may claim.

As stated above, the sole issue presented by appellant is the reduction or termination of alimony.

Alimony is not a required provision in the marital dissolution agreement provided by T.C.A. § 36-4-104. Nevertheless, the parties saw fit to include alimony in their agreement. It must be presumed that the alimony provision was part of the inducement or consideration for the other provisions regarding division of the marital estate. The Courts are justified in being reluctant to disturb an alimony obligation assumed under such conditions.

The evidence does not preponderate against the refusal of the Trial Judge to alter the liability of the husband for alimony.

The appellee/wife requests the award of attorney's fees on appeal. As noted above, the marital dissolution agreement specifically provides that a party who succeeds in a move to enforce the agreement is entitled to attorney fees. It does not appear from this record that either party has heretofore invoked this attorney fee provision. No reason occurs to this Court why the provision should not be enforced.

Accordingly, the wife is hereby awarded reasonable attorney fees incurred in this appeal, the amount of same to be ascertained and judgment rendered therefor by the Trial Court upon remand.

The judgment of the Trial Court is affirmed. Costs of this appeal are accessed against the appellant. The cause is remanded to the Trial Court for further proceedings in conformity with this opinion.

**AFFIRMED AND REMANDED**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

_____
BEN H. CANTRELL, JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE